NORFOLK SOUTHERN RAILROAD COMPANY v. THE TOWN OF
MOREHEAD CITY.

(Filed 28 October, 1914.)

1. **Cities and Towns—Ordinances—Railroads—Rights of Way—Streets—Obstructions—Equity—Injunction.**

The enforcement of an ordinance making it unlawful and a misdemeanor to maintain any telegraph line at any point upon any of its streets more than 24 inches beyond or outside of the curb line separating the sidewalk from the driveway of the street, providing that the same may be removed under the direction and control of the mayor at the cost of the corporation, etc., maintaining them, and also providing a fine of $50 for a conviction of violating the ordinance, will not be enjoined at the suit of a railroad company upon whose right of way the town has grown up since its acquisition, it appearing that the right of way has since become a part of a principal street of the town, and the telegraph poles thereon are within the driveway of the street; that the placing as required by the ordinance can be made at a comparatively small expense, and the business of the company will not be seriously interfered with by making the change. *R. R. v. Goldsboro,* 155 N. C., 356, and that line of cases, cited and applied; *Muse v. R. R.,* 149 N. C., 443, cited and distinguished.

2. **Criminal Law—Injunction—Cities and Towns—Railroads.**

The courts will not interfere by injunction with the enforcement of the criminal laws of the State, except in very restricted instances, and such relief is not available where a municipality, in the reasonable exercise of power conferred upon it for the public good, has enacted a valid ordinance relating to the placing of poles upon its streets, which does not unduly interfere with the plaintiff's rights or obstruct it in the performance of its duties as a *quasi*-public corporation.

Appeal by plaintiff from *Daniels, J.,* at June Term, 1914, of Carteret.

Civil action to restrain the enforcement of a municipal ordinance, heard on demurrer to complaint.

The ordinance in question and the general facts more directly relevant as to its physical effects upon plaintiff's property are stated in the complaint as follows: "That on or about 1 July, 1912, the commissioners of the town of Morehead City attempted to adopt an ordinance of and concerning this plaintiff's line of poles and wires, reading as follows: 'It shall be unlawful for any person, firm, or corporation to erect or maintain any telegraph, electric light, or telephone pole at any point upon any of the streets of this city more than 24 inches beyond or outside the curb line separating the sidewalk from the driveways of said streets. Any person, firm, or corporation violating this ordinance shall be guilty of a misdemeanor, and upon conviction shall be fined

$50, and each additional day during which said poles are allowed to remain outside the limits above specified shall constitute a separate offense. All poles standing in violation of the provisions hereof shall be removed under the direction and control of the mayor, and the actual cost and expense of such removal shall be charged to and collected from the owner of such poles, and the mayor, in the name of the city, is authorized and empowered to sue for and collect the same.' That in the attempt to enforce said ordinance the commissioners of the town of Morehead City and the town of Morehead City have undertaken and attempted to construe the same to apply to the line of poles and wires erected upon the strip of land used by this plaintiff as its right of way, and which was owned by the Atlantic and North Carolina Railroad Company, and under lease to this company, which said line of poles and wires were erected by the said Atlantic and North Carolina Railroad Company, and has been used and maintained by this company as a necessary part of the conduct of said business of operating its said railroad, and the said commissioners and said town of Morehead City have threatened and are now threatening and attempting so to construe said ordinance as to require this plaintiff to remove its said line of telegraph poles and telegraph wires and telephone wires in and upon said strip of land aforesaid, and to deprive this plaintiff of its rights to use the same in accordance with its contract with the State of North Carolina, as aforesaid, and in violation of its legal rights."

There was judgment denying relief, and plaintiff excepted and appealed.

*L. I. Moore for plaintiff.*
*Guion & Guion for defendant.*

HOKE, J. From a perusal of the complaint and admissions made on the argument, it appears that plaintiff is the owner and in the present enjoyment of the franchise and property rights and privileges of the Atlantic and North Carolina Railroad Company, and, in 1855 or about that time, said road was constructed through the locality now known as Morehead City, having a right of way of 100 feet on each side of its line; that shortly thereafter the defendant town was built up along the railroad and on the territory adjacent thereto and the street known as Arendell Street became and was the principal public thoroughfare of the town, running for a mile and more up and down the road, covering the right of way on either side, which was the driveway for vehicles and in addition thereto were the sidewalks, beginning at the curb on the outer edge of the right of way and extending the usual width further out; that the practical effect of the ordinance, if enforced, will be to require plaintiff to remove the poles used for its telegraph system from

their present position in the driveway to a point within 24 inches of the curb along the sidewalk, and which would still leave them on the right of way.

Upon these, the facts chiefly relevant, we are of opinion that no cause of action is presented in the complaint, and that the same has been properly dismissed. We have held in several recent cases, notably in *R. R. v. Goldsboro,* 155 N. C., 356, and *State and Morehead City v. R. R.,* that where a railroad right of way has become an established street of a city or town, the same is subject to municipal regulations made in the reasonable exercise of the police power for the public benefit; and the same position has been stated with approval by the Supreme Court of the United States in *Cincinnati, etc., Ry. v. City of Connersville,* 211 U. S., 336, and other cases of like import.

In *Goldsboro v. R. R., supra,* it was held, among other things: "A railroad company accepts a charter from the State in contemplation of and subject to the development of the country, and with the expectation that cities and towns would require new or improved streets across rights of way acquired, and, therefore, by prior occupancy a railroad company can obtain no rights which would impede or render dangerous streets of incorporated towns to whom the power had been granted, in the exercise of their police power for the benefit of the citizens"; and in *State and Morehead City v. R. R., Associate Justice Brown,* delivering the opinion, said: "When the defendant accepted the charter from the State, it did so on the condition necessarily implied that it would conform at its own expense to all reasonable and authorized regulations of the town as to the use of the streets and thoroughfares rendered necessary by its growth for the safety of the people and the promotion of the public convenience." And to like effect in *R. R. v. Connersville, supra,* it was said by *Associate Justice Harlan*: "The railway company accepted its franchise from the State, subject necessarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their character, as to the opening or use of streets which had for their object the safety of the public or the promotion of the public convenience, and which might from time to time be established by the municipality—when proceeding under legislative authority—within whose limits the company's business was conducted. This Court has said that 'The power, whether called police, governmental, or legislative, exists in each State, by appropriate enactments not forbidden by its own Constitution or by the Constitution of the United States, to regulate the relative rights and duties of all persons and corporations within its jurisdiction, and therefore to provide for the public convenience and the public good." *Lake Shore, etc., Co. v. Ohio,* 173 U. S., 285, 297.''

From the facts in evidence it appears that the ordinance in question is evidently designed to remove an undesirable obstruction from the main part of the driveway; that it can be observed and its provisions carried out at moderate expense; that it in no way hinders or seriously impairs the use and control of these poles still left on plaintiff's right of way, in the proper and efficient performance of the duties incumbent upon the company by its charter and, under the authorities cited, we must hold it to be a valid and reasonable exercise of power conferred upon the town for the public benefit.

In the cases chiefly relied upon by the plaintiff, *Muse v. R. R.,* 149 N. C., 443, and *R. R. v. Olive,* 142 N. C., 257, the power of a municipality to enact ordinances of this character was in no way involved, the cases only presenting the rights of the company over its right of way as against a private citizen or the landowner who had been allowed to subject the land to its ordinary uses until it was required by the company for railroad purposes in the proper management of its business, a view that was taken of these same cases by the Supreme Court of the United States when it affirmed the case of *R. R. v. Goldsboro,* on writ of error. *R. R. v. Goldsboro,* 232 U. S., 548.

We are not inadvertent to the suggestion arising on the record that this may be an unwarranted attempt to stay by injunction the enforcement of the criminal law of the State. It is undoubtedly the general rule in this jurisdiction that such a proceeding will not lie. *R. R. v. Goldsboro, supra; Crawford v. Marion,* 154 N. C., 74; *S. v. R. R.,* 145 N. C., 495; and while the Federal courts seem to have modified the principle in certain causes coming within their jurisdiction, the exceptions established by these cases are in very restricted instances (*Ex parte Young,* 209 U. S., 124), and none of them would uphold such a process on the facts existent here, where a municipality, in the reasonable exercise of the powers conferred upon it for the public good, has enacted a valid ordinance which does not unduly interfere with plaintiff's rights or obstruct it in the performance of its duties.

There is no error, and the judgment dismissing the action is
Affirmed.