ORRIN WEEKS v. CAROLINA TELEPHONE AND TELEGRAPH COMPANY.

(Filed 24 March, 1915.)

**Cities and Towns—Streets—Moving Houses—Wire Companies—Overhead Obstructions—Damages.**

The plaintiff attempted to move a house he had purchased, along the streets of an incorporated town, from one location to another, under the provisions of an ordinance of the town and by permission of the proper authorities, and also under promises of the local manager of a telephone company, operating its overhead wires and cables on the street, that the company would arrange for the passage of the house where the wires of the company would otherwise prevent. The failure of the company to

fulfill its promise except at a heavy expense to the plaintiff prevented him from passing the cables and wires of the company and forced him to sell the house, to be used in a different place, at a loss. *Held*, the telephone company was answerable in damages. Discussion of advisability of requiring telephone and telegraph companies to place their wires underground.

BROWN, J., did not sit; HOKE, J., concurred in result; ALLEN, J., dissenting.

APPEAL by plaintiff from *Rountree, J.,* at November Term, 1914, of LENOIR.

*C. V. Cowper, Loftin & Dawson, and Rouse & Land for plaintiff.*
*Y. T. Ormond and G. M. T. Fountain & Son for defendant.*

CLARK, C. J. This is an action by a resident and taxpayer of Kinston who had obtained a permit from the city authorities to move a house along the street from one point to another in that town. The city had passed an ordinance regulating the moving of houses which required a permit from the city and that the mover should bear all expenses of removing the electric light wires for the passage of such house, with a penalty for allowing any building to remain in the same place more than six hours in the day, Sundays excepted.

The city had granted the defendant a franchise to erect the telephone system by an ordinance under one section of which the defendant obligated itself to observe the ordinances of the city, then in force or thereafter to be enacted, which was its duty anyway. The poles were erected under the supervision of the board of aldermen. After the completion of the defendant's system it appeared before the city council and asked to be permitted to raise the rates of phone rentals, as provided in the franchise, which the board permitted, and fixed the rates. It was admitted that at the time of the franchise, and since, it has been usual to move buildings under the permit of the city.

The plaintiff testified that he was negotiating the purchase of a one-story building and offered to pay $375 for the building, provided the city would grant the permit to move and that the telephone company would remove its wires to permit the building to be carried from its then location to a vacant lot on which the plaintiff wished to place it. He said that he received from the authorities permit to remove the building and then applied to the defendant's manager, who told him to go ahead and he would remove the wires when necessary, and that in consequence he purchased the house.

Under these conditions the plaintiff testified he began to remove the building. The small wires were actually cut and the house was moved into the street and reached the first crossing, where the defendant's wires, poles, and cables interfered. At this point the defendant's manager

refused to remove the obstructions unless the plaintiff would pay all expenses, which the defendant's manager estimated at a large sum. The defendant offered evidence tending to show that cables would have to be cut at a great expense, while the plaintiff offered evidence tending to show that the building could have proceeded by merely lowering or raising the cable. After expending $500, the plaintiff was compelled to sell the building at the highest market price, $100, and claims that he sustained a loss of $400, not including the loss of all benefit and profit from the proposed transaction.

The court erred in granting a nonsuit. The town of Kinston was vested with full authority to regulate the use of its streets, and by ordinance had assumed to control the moving of buildings along said street, and had granted this plaintiff a permit to thus move the building. Besides, there was evidence tending to show that the defendant, through its local manager, who was in control of its plant and operations in that town, contracted with the plaintiff to remove the obstructions in the way of his removal of this building.

The full authority of a municipality over its streets and the wide discretion reposed in them is fully recognized in *Tate v. Greensboro,* 114 N. C., 392, and in the cases cited thereto in the Anno. Ed. These hold that such authority will not be reviewed by the courts unless it has been exercised negligently, willfully, or maliciously.

While we have no direct case in our State as to moving buildings along the streets with the permission of the town authorities, the law is thus summed up 28 Cyc., 909 (c), with citations: "A citizen has a common-law right to the reasonable use of streets for the purpose of moving buildings, subject to reasonable restrictions which the municipality may impose." A case in point is *R. R. v. Calvert,* 11 Anno. Cases, 635, with a valuable note containing a summary of the authorities. In *Day v. Greene,* 4 Cush. (Mass.), 423, *Chief Justice Shaw* says: "That it is often useful and convenient that buildings should be so removed is found by experience . . And therefore it seems highly proper that the power to authorize and regulate it should exist somewhere." This is cited as a correct statement of the law, 1 Dillon Mun. Corp. (4 Ed.), sec. 395. In *R. R. v. Calvert,* 11 A. and E. Anno., 639, it is said: "The mere fact that appellant enjoys contract rights in the streets is not controlling. The regulations operate on the property, and it must always be understood that those who enter into such contract relations with the public as render their property reasonably subject to control do so with a knowledge that the police power *is an inalienable and continuing authority."* In the note referring to this case it is said: "It was held that for the purpose of moving a building the plaintiff had the right, upon compliance with the terms of the ordinance, to cut the wires of the electric light company."

A reasonable use of the streets for the purpose of moving buildings is proper and necessary. Even if it were conceded that the city could barter away this right which it held in trust for its citizens, it has not done so in this case. Its ordinances recognize such right by requiring a permit, and the franchise granted to the defendant required it to observe the city ordinances. In *Moore v. Power Co.,* 163 N. C., 302, it was held, in reference to the city's power over its streets, that "A municipal corporation cannot transfer to a *quasi*-public corporation for its convenience and profit the superior right which the city authorities can exercise only for the public benefit."

The defendant, like all other public-service corporations, exercises its rights and powers in subordination to those of the public. The poles and wires of the defendant are unsightly, and the wires, being above ground, expose the defendant to interruption of the service from storms and electrical disturbances. It is strange that such companies do not avoid this by placing their wires underground. But if they prefer to keep them above ground, to save the expense of their proper installation in pipes underground, they must not interfere with the superior rights and privileges in the streets of the citizens or with those rights held by the authorities in trust for the people. *R. R. v. Morehead City,* 167 N. C., 118.

Besides, there was evidence of an express agreement and contract between the plaintiff and the defendant's manager upon which he could base an action for the defendant's subsequent interference with the removal of the house after agreeing that the wires should be removed for it. The defendant contends on its evidence that its manager agreed only to remove the "wires," but said nothing about removing "cables." The defendant also contends that its manager at Kinston in charge of its plant and operations was the "local manager," and did not have authority to make such contract. This matter should have been submitted to the jury under proper instructions, and should not have been decided by the court itself by granting a nonsuit.

Reversed.

BROWN, J., did not sit; HOKE, J., concurred in result; ALLEN, J., dissented.