STATE, EX REL. W. H. BARNUM, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED DECEMBER 29, 1916. No. 18981.

1. **Municipal Corporations: USE OF STREETS.** A city of the metropolitan class has control of its streets, and, while it cannot prohibit the general and ordinary use for which the streets are constructed, it is within the reasonable discretion of the authorities of such city to prescribe the uses to which a street may be put and to regulate the traffic thereon.

2. ———: ———. Moving a building along a street, although not for the benefit of the city itself or its inhabitants generally, may be considered a public use of the streets in the sense that the public generally may be permitted to so use the streets; and the city authorities may allow such use of the streets.

3. ——— : ———. Under a general ordi~~nce of the city requiring companies using or operating poles and wires to temporarily remove the same to allow the passage of buildings which it may be necessary to move along or across any street, an ordinance giving a franchise to a street car company, which provides that such company shall so construct its track "as to present the least possible obstruction to the ordinary and public use" of the street, may be construed to include the moving of buildings along the street as a public use of the street, and to require the company to temporarily remove its wires to allow the passage of buildings, when found by the proper authorities to be necessary.

4. **Constitutional Law.** Under such conditions, an ordinance requiring the company to pay the necessary expense of such removal of the wires is not unconstitutional as depriving the company of its property without due process of law.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*John L. Webster* and *William Ross King,* for appellant.

*John P. Breen, contra.*

SEDGWICK, J.

The district court for Douglas county granted the relator a peremptory writ of mandamus commanding the respondent "to forthwith temporarily hoist or elevate or, if necessary, temporarily remove the overhead electric wires and wire works maintained by it at the crossing or intersection of Eighteenth street and Burt street, in the city of Omaha, so as to allow the passage and moving of the building now in the street at said intersection and about to be moved across said crossing by the relator, Barnum, the cost of so elevating or removing, temporarily, said wires and wire works shall be borne by the respondent, Omaha & Council Bluffs Street Railway Company." The respondent has appealed to this court.

The relator is a house-mover, and is licensed as such under an ordinance of the city of Omaha, which provides: "It shall be unlawful for any person other than a licensed house-mover to move, raise, lower or support on temporary blocking or jacks or wedges any building or any wall or a part of a wall of any building within the corporate limits of the city of Omaha.  *  *  *  The

bond required to be filed by any applicant for a license as house-mover shall be in the sum of three thousand dollars ($3,000) with good and sufficient securities. * * * Before moving any building upon, along or across any public street, alley or any public ground in the city of Omaha, a permit shall be first obtained from the building inspector by such licensed house-mover, which permit must be countersigned by the city engineer, authorizing and allowing such house-mover to move the building designated upon, along or across the streets necessary to be crossed. It shall be the duty of the city engineer to determine upon what streets it shall be necessary for the house-mover to cross in the moving' of any structure, and he shall designate the streets upon, over and across (which) such building or structure shall be moved. * * * It shall be unlawful for any such house-mover under the permit to move the structure for which permit is given over, upon or along any other street than the streets mentioned in the permit. * * * Before a permit is issued for any of the operations defined by this article, and before any of the operations defined therein shall have been begun, the building inspector shall examine the building, structure or part thereof on which it is desired to perform such operations, and said building inspector shall refuse to grant a permit for same if any of the following conditions are found to exist. No building shall be moved, in the city of Omaha, which is in such condition that it is worth less than fifty per cent. of the cost of a similar new one. * * * Whenever it shall be necessary for any licensed house-mover to move along or across any street, alley, or other public thoroughfare or public property, any building or other structure of such height or size as to interfere with any wires, cables or other overhead work or the poles or other supports of such overhead work belonging to any individual, association or corporation operating and maintaining same in accordance with any ordinance of the city of Omaha relating thereto, such party or parties,

firm or corporation or as many of them as are jointly operating such overhead work and the supports thereto shall, within twelve hours after written notice has been served severally upon each local manager, agent, or other person authorized to accept legal service, temporarily remove such overhead work and such supports thereto as shall be necessary to allow such building or structure to pass. The expense created by such removal and replacing of said overhead work and the supports thereto shall be born by the person, association, firm or corporation, or all of them, operating and maintaining such overhead work and the supports thereto."

The respondent contends that this provision requiring them to bear the expense of removing and replacing their wires is unconstitutional and void, because it amounts to taking of their property without compensation. Many cases are cited from various courts holding that the moving of buildings along the public streets of a city is an extraordinary and unusual use of the streets, and also cases are cited holding that, when a city has granted a franchise to a corporation to construct a public improvement requiring the erection of poles and wires over the streets of the city, and requiring the corporation, in consideration of the franchise, to render specified services to the city and the inhabitants thereof, and the corporation has accepted the franchise, and in compliance therewith has erected and maintained its poles, and wires and is performing the duties imposed upon it by its franchise, it is beyond the power of the authorities of the city to allow any extraordinary and unusual use of the streets that will interfere with the necessary poles and wires, properly placed and used by the corporation in accordance with the terms and regulations of its franchise, to the damage of the property of the corporation so being used. These authorities hold that, under such conditions, the franchise constitutes a contract between the city and the corporation that is binding upon the city and its authorities. The respondent

says in the brief: "We would be free to admit that, if the franchise of this appellant company required it to remove the wires at its own expense for a house-mover we would not be in a position to complain." For the purpose of this decision, then, we may concede the principle announced in these authorities, without committing ourselves to their general application to conditions in our state, and dispose of the case upon the construction of the provisions of the franchise of the respondent corporation and the ordinances of the city. The respondent corporation purchased the rights of three several corporations under their respective franchises. Each provided that the grantee should so construct its railway tracks and appliances "as to present the least possible obstruction to the ordinary and public use of said streets." These franchises were granted in 1887 and 1888, and subsequent to the enacting of an ordinance in 1886 which provided: "Whenever it shall be necessary for any person to move along or across any street or alley any vehicle, structure or buildings of such height or size as to interfere with any telegraph, telephone or electric wire poles or wires, the company or companies using or operating such poles and wires shall, upon receiving twelve hours notice, temporarily remove such poles or wires as will allow or admit of the passage of such vehicle, structure or building." The question is whether this ordinance of 1886 and these provisions of the franchise ordinances enacted thereafter, and the ordinance above quoted which required such companies to pay the expense of removing their obstruction to the passage of buildings along the street, can be construed together so as to give force to them all and render them consistent with each other. The two ordinances, if construed together without reference to the franchise ordinances, would of course require the companies to pay such expense. The argument of the respondent corporation is that these franchise ordinances, in the provisions that the "track of said company shall

be so constructed and maintained as to present the least possible obstruction to the ordinary and public use of said streets and avenues," exclude the idea that it can be held to avoid obstruction of extraordinary and unusual use of the streets. It is said that the movement of buildings along highways is neither an ordinary nor a public use of the highway. It appears that two licensed house-movers were examined as witnesses on the trial of the case. One of them testified that from 1887 about 500 or 600 houses were moved each year across the streets of the city. The public use of the streets may mean either a use for the benefit of the public, or a use by the public generally. As the city has control of its streets, and, using a reasonable discretion, can regulate the traffic thereon and prescribe the uses to which a street may be put, not, of course, prohibiting the general and ordinary use for which the streets are constructed, it is manifest that the authorities of the city may within reasonable limits determine what is and what is not a public use of the streets. In providing, as these ordinances do, that under suitable regulations and restrictions the public may use the streets for the movement of buildings, it must be conceded that the authorities have not exceeded their power nor abused their discretion. The ordinance of 1886, therefore, in the light of the subsequent franchises, must be held to declare that the movement of buildings along the streets is a public use of the streets, and that the provisions of the respective franchises of the respondent corporation's constituent companies that they must not with their appliances obstruct the public use of the streets forbids their preventing such movement of buildings. Under such a franchise contract it is not an abuse of authority to require the corporation to bear the necessary expense of preventing such obstruction. The trial court has so construed these franchises, and the judgment is therefore

AFFIRMED.

ROSE and FAWCETT, JJ., not sitting.