Railway Co. v. Sproul.

No. 20,602.

THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*, v.
LOREN SPROUL, *Appellee*.

SYLLABUS BY THE COURT.

HIGHWAYS—*Moving Buildings on Streets—Proper Use of Highways—
Raising Wires Over Streets—Who Should Bear the Expense.* The
moving of buildings along streets is a recognized and proper use of
them, and in the absence of a statutory or municipal regulation as to
the manner of moving the buildings, or as to the raising or removal
of wires placed by a railroad or other company across streets so that
buildings may be moved along the streets, the expense of raising or
removing the wires to allow a building to pass, where the interference
is not unreasonable and the expense is inconsiderable, should be borne
by the railroad company rather than by the house mover.

Appeal from Butler district court; ALLISON T. AYRES, judge.
Opinion filed January 6, 1917. Affirmed.

*W. P. Waggener, Walter E. Brown,* and *J. M. Challiss,* all of
Atchison, *A. L. L. Hamilton,* and *B. R. Leydig,* both of El Do-
rado, for the appellant.

*C. A. Leland, George J. Benson,* and *T. A. Kramer,* all of El
Dorado, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the Missouri
Pacific Railway Company to enjoin Loren Sproul from remov-
ing or interfering with the telegraph wires of the company,
used in connection with the operation of its trains.

The defendant is engaged in the business of moving build-
ings in El Dorado, and had a contract to move a building from
where it stood to a place on the other side of the plaintiff's rail-
road. Suspended on the same poles were the wires owned
jointly by the plaintiff and the Western Union Telegraph Com-
pany, also those of the Atchison, Topeka & Santa Fe Railway
Company, and a local telephone company. When the defendant
was ready to move the building across the track, he notified the
agent of the plaintiff that he desired to cross the track under
the wires of the company, and was informed that the wires

might be lifted for the passage of the building upon the payment of $3.80, a charge made, it was said, to meet the expense of a lineman releasing and raising the wires. Defendant refused to pay the charge, and as he insisted on crossing the railroad, plaintiff obtained an order restraining him from interfering with the wires. Subsequently the order was modified so as to require the defendant to deposit the $3.80, the alleged expense of moving the wires, and $20 to cover the probable costs of the action. The deposit was made and the building was moved across the railroad by releasing the wires from the poles on either side of the crossing, and then two men on the top of the building, neither of whom appears to have been an employee of the plaintiff, lifted the wires and the building passed underneath them. At the end of the trial the court gave judgment for the defendant, refusing the injunction asked by the plaintiff and adjudging that the $23.80 previously deposited by the defendant should be returned to him. The plaintiff appeals.

The right of the plaintiff to maintain telegraph lines along and across public highways "in such manner as not to incommode the public in the use of such roads, streets and waters" (Gen. Stat. 1909, § 1789) is directly given by statute, and this right may be regulated but not denied by a municipality. (*Wichita v. Telephone Co.,* 70 Kan. 441, 78 Pac. 886; *Telephone Co. v. Concordia,* 81 Kan. 514, 106 Pac. 35.)

It does not appear that the city had undertaken to regulate the height at which wires should be maintained on and over the streets of the city nor to provide for lifting the wires when high structures were to be moved upon the streets over which wires had been placed. The right of the defendant to the reasonable use of the street for the moving of buildings is not open to question. The testimony is that buildings are frequently moved along the streets of El Dorado and is not an uncommon use of the streets in other cities. It appears that the city of El Dorado had issued a license to the defendant authorizing him to move buildings, but it is not shown that any regulations had been made by the city as to the manner of moving buildings or as to the relative duties and rights of parties when buildings are being moved across streets over

39—99 KAN.

which wires are strung. It is competent for a city to regulate the height at which telegraph wires shall be placed so as not to incommode the public in the use of the streets, and also to regulate the business of moving buildings along and across streets so as not unnecessarily to interfere with the use of the streets by others; and no reason is seen why it might not provide for and regulate the raising and removal of wires so as to allow buildings to pass under them and to provide for the expense of such raising and removal of wires. No such regulation having been made, and each party having a right to the use of the streets, the only substantial question in the case is whether the house mover should pay the expense of lifting the wires of plaintiff for the passage of the building. It does not appear that any of the other companies made any objection to the raising of their wires or any charge for doing it.

The plaintiff insists that its right to the use of the streets was paramount to the rights of a house mover, although licensed by the city, and that the burden of raising the wires should be placed upon the defendant. The railway company was granted a right to the use of the streets, but took it subject to public control and to the rights of others to use the streets. The grant was made, as we have seen, to be used in such a manner as not to interfere with the public in the use of the streets. The moving of buildings, derricks and such structures on the streets and other highways is not an infrequent or uncommon use. While the use may not be regarded as ordinary, at least not so common as travel over the streets by wagons, carriages, automobiles and like vehicles, it is a frequent and a proper use and one which the plaintiff should have contemplated and provided for in placing its wires over the streets. (*Winegarner v. Edison*, 83 Kan. 67, 109 Pac. 778; *Wade v. Electric Co.*, 94 Kan. 462, 147 Pac. 63; *Wade v. Electric Co.*, 98 Kan. 366, 158 Pac. 28; *Shank v. Great Shoshone & Twin Falls Water Power Co.*, 205 Fed. 833.)

If the railway wires had been placed only ten feet high, so that a load of hay, a traction engine, a threshing machine, or some such outfit which customarily passes along the streets could not have passed under the wires without raising them, it would hardly be contended that the railway would be entitled to compensation for raising the wires in order to per-

Railway Co. v. Sproul.

mit the outfits to pass. In view of the frequent use of the streets for moving buildings, disclosed by the evidence, and the holding of this court that it is a proper use and one which should have been within the contemplation of those placing wires over public streets, and in the absence of statutory or municipal regulation as to the manner and expense of raising the wires in order that the streets may be used for that purpose, we think the expense of raising them in order that the defendant may move his building should be borne by the plaintiff or the company placing the wires there. It appears to have been a simple and easy task, one that might have been done by any ordinary lineman in a few minutes. As trains are operated by orders sent over the wires it is important that they should be handled by experienced persons and in a way that would not unnecessarily interrupt the use of the wires or imperil persons and property that are being moved under orders sent over the lines. No great trouble or expense is involved in lifting the wires for the passage of the kind of buildings which are ordinarily moved. Cases are cited in which the moving of a building along the streets is not within the rights enjoyable by the public as a use of the streets. These depend to some extent on statutes and ordinances, and also on the fact that the moving of buildings in the particular region is not a frequent or recognized use of the streets. The following are illustrative of those cases: *Edison Electric Light & Power Co. v. Blomquist,* 185 Fed. 615, and *Northwestern Tel. Ex. Co. v. Anderson et al.,* 12 N. Dak. 585.

This rule is not in keeping with the view taken by this court in regard to the use that may be made of the streets, and especially where, as here, it is shown that it is a use to which they are frequently and customarily devoted in a particular city or community.

In *Indiana R. Co. v. Calvert,* 168 Ind. 321, an electric street railway company sought to recover damages from a house mover who had moved a building over its railroad. A city ordinance required the street railway company to raise or remove the wires in order to allow buildings to pass. The company refused to comply with the requirement and the house mover himself loosened the trolley wires and raised them so the building could pass over the railroad. The work was done

in a reasonable time and without unnecessary damage to the company, but it did interrupt the operation of the railroad to some extent and caused an alleged loss and expense of $87.50. The court held that the regulation was a proper legislative exercise of the police power, and that while ordinary travel is the primary purpose for the use of a street, the moving of buildings along them is a convenient and customary use, and that the conduct of the parties with reference to it was within public control. It was further held that as the interference and damage was minor and inconsequential and could not be said to be unreasonable, the company was not entitled to recover damages from the house mover.

Under the circumstances shown here we think the trial court ruled correctly in holding that the defendant should not be required to pay the expense of raising the wires of the plaintiff when the building was moved under them. Its judgment is affirmed.

DAWSON, J. (dissenting): I dissent. I do not think the moving of buildings over a public road is a common use of the highway. If those telegraph wires had belonged to the city of El Dorado or to Butler county, I do not think any court would hold that they would have to be moved at public expense every time an unusual use of the highway, like house moving, was exercised. It would then be apparent to everybody that the expense of moving the wires should fall on the person who demanded such unusual accommodation.

There is at present a marked tendency towards municipal ownership of public utilities. Assuming that this tendency will continue, the doctrine announced in this decision will be overruled or some other effective way will be found to abrogate it.