## SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. WILLIAMS BROS., Inc. *

### No. 13983.

Court of Appeal of Louisiana. Orleans.

May 16, 1932.

J. C. Henriques and Harry M. Mayo, Jr., both of New Orleans, for appellant.

Edward Rightor and Eugie V. Parham, both of New Orleans, for appellee.

JANVIER, J.

New Orleans Public Service, Inc., engaged, among other things, in the furnishing of gas to the citizens of New Orleans, found it necessary to lay certain new gas mains along St. Claude avenue.

Deeming it advantageous to contract with others for the laying of the said mains rather than to undertake the said work itself, the said New Orleans Public Service, Inc., employed defendant, who undertook to dig the necessary trenches.

In carrying out the contract defendant damaged certain underground telephone cables of plaintiff, hence this litigation in which reimbursement is sought for the cost of making the necessary repairs.

In this suit plaintiff claims $411.04 as the cost of repairing the cable which crossed St. Claude avenue near Montegut street, and in another, No. 13984 of our docket, 141 So. 837, $323.42 is claimed as the total of three bills for repairing the damages sustained at three other points, to wit, at St. Maurice avenue, at Charbonnet street, and at Egania street.

In each of the two suits judgment was rendered in favor of defendant, and the matters are now before us on appeal.

In this opinion we shall give our reasons for deciding both cases, and, in the other case, will merely refer to the reasons now set forth.

Before undertaking a consideration and discussion of the evidence with reference to the actual cutting of the four cables, we shall give thought to the relative rights and obligations which exist when two or more private corporations engaged in public service find it necessary to lay cables, pipes, or mains which, to some extent, interfere with one another, and, where the construction work required by one must cross the previously constructed lines of another.

Our attention has not been directed to any statute law governing such situation, nor has either counsel cited authorities pertinent, and our own independent research has brought to light the fact that there is a surprising dearth of jurisprudence on the subject.

The matter is discussed in a general way in Ruling Case Law, vol. 19, p. 1160, in section 435 of the title "Municipal Corporations." There we find the following: "The grant of a franchise to a public service corporation to erect and maintain structures in a public street is always subject to the implied condition that the public retains the right to improve the street or to authorize the use of the same by other public service corporations, and it is consequently well settled that the holder of such a franchise is not entitled to compensation if the use of its structures is interfered with, or if it is obliged to move their position or alter their construction by reason of a change in the grade of the street, or its improvement by the municipal authorities in some other way, or even when a like injury is caused by the erection of structures in or across the street by another public service corporation acting under authority of law."

In a note appearing in L. R. A. 1917E, on p. 1094, we find the following: "A search has failed to disclose any case involving the liability of one public service corporation to another, but from a dictum in Portsmouth Gas-Light Co. v. Shanahan (N. H.) supra [65 N. H. 233, 19 A. 1002], to the effect that the right of a city to build a sewer is at least equal to that of a gas company to maintain its pipes in the street, and that, assuming that their rights are equal, each is bound so to exercise his right as not unnecessarily, negligently, or unreasonably to interfere with the other's right, and will not be liable in damages so long as he does so, it would appear that the rule as to the liability of one public service corporation for damage to the mains of another is the same as the rule respecting the liability of a municipality; i. e., that there is no liability in the absence of negligence."

We have reached the conclusion that the right which one such corporation may have obtained to construct its facilities over, on,

*Rehearing denied June 27, 1932.

or under a public street or other public property is in no sense to be likened to the rights that flow from ownership, and that, where the interests of the citizens require it, another corporation may be given rights which necessitate interference with the previously constructed lines of the prior user, and that, in such case, the duty of second user is to take all reasonable steps to ascertain the location of such existing facilities and to then take all reasonable care to avoid injuring them.

In other words, the second user is liable only for negligence in failing to ascertain the existence and location of other lines or for negligence in failing to avoid them after having learned of their existence.

Of course, it follows that the prior user must furnish to the second user all available information as to locations, and that this information must be reasonably accurate.

The record shows that before defendant commenced the cutting of the trenches in which the gas mains were to be constructed, it obtained from the New Orleans Public Service, Inc., what it considered accurate information as to the location of all cables and underground property of plaintiff company.

We are also well assured that the New Orleans Public Service, Inc., had obtained from plaintiff the data from which it compiled the charts or blueprints which it had furnished to defendant as showing the said locations, and that it also obtained from the office of the city engineer such information as was available there.

It is contended that, when the representative of the New Orleans Public Service, Inc., called at the office of plaintiff, to secure the said information as to the location of plaintiff's underground property, he did not sufficiently make it clear that the information was to be used for the purpose of avoiding the striking and damaging of such underground property, and it is also said that the said representative did not call on the proper officials of plaintiff to secure the said information.

Whether such contentions are well founded we have not conclusively determined, though it appears superficially that all reasonable effort was made to make certain of the authenticity and correctness of the information, but we feel that plaintiff would be in better position to complain that the information obtained was secured from the wrong office or from some one who did not understand the purpose for which it was to be used if plaintiff had shown or could show that the information furnished differed in any way from that which would have been given had the obtaining of it been accompanied by all possible formality and certification.

No effort was made to show that any one else connected with plaintiff could have furnished more accurate advice as to the location of the said cables than was actually given. In fact, it is convincingly shown that plaintiff company did not possess accurate records as to the correct locations of the particular cables which are involved here.

The first cable cut was at Montegut street, and there the blueprint, furnished to defendant through the New Orleans Public Service, Inc., and prepared from information received from plaintiff's office, did not show any cable at all. If the records of plaintiff showed that there was a cable at that point, these records should have been produced, and, if they had been, plaintiff could then have been heard to say that, if the proper officials had been consulted, the correct information would have been given, and that the following of the correct information would have avoided the damage which occurred.

Plaintiff contends that at Montegut street the cable was cut not by the trench digging machine, but by an axe, and that this in itself shows that the cutting was either intentional or resulted from such gross negligence as to be tantamount to malicious design.

Conceding that at that point the cutting was done with an axe and was done on both sides of the trench, and there is some doubt as to whether an axe was used, it does not necessarily follow that there was maliciousness or even carelessness connected with the cutting. It must not be overlooked that, according to the blueprint on which defendant was acting, there was no cable at or near that point. Therefore, when the trench machine struck against the cap plank or board covering the cable, it may well be that in perfect good faith the employees of defendant assumed that the obstruction was only an old piece of board or some abandoned structure. True enough, the new wood of a similar cap plank was exhibited in court, and it did not much resemble that of an old abandoned plank, but the one cut had been underground for some time and might well have been mistaken by a laborer even if he had every intention of not causing damage.

Nor does the evidence as to the damage caused at the other points indicate carelessness or wanton inattention on the part of defendant's employees.

It appears that at Egania street, while the work was in progress, those in charge of the trench machine noticed a cable attached to a telephone pole on one side of the street. They stopped the machine for some time and waited for an employee of plaintiff to arrive and to advise them as to the location of the cable in question. The employee found it impossible to locate the cable accurately, but finally instructed the employees in charge of the machine to cut up to a certain point by hand. This was done, but, after the trench machine was again lowered on instructions of

the employee of plaintiff, the cable was struck and damaged. We cannot see how more care could have been used than was exercised in this instance.

At Charbonnet street the blueprint showed no cable, and yet, when the employees of defendant noticed a cable on a pole some distance from the intersection, they called upon the telephone company to advise them of the location of the cable. Every effort was made by these employees of the telephone company, as well as by the employees of defendant. to locate this particular cable, but their efforts were unsuccessful and the cable was damaged.

At St. Maurice avenue the blueprint did not show any cable at the intersection, and it was cut before the employees had any information whatever as to its location.

In fact, in every case in which a cable-is shown to have been cut it is quite evident that the correct location was not shown on the blueprints and was not given by plaintiff's employees, and, in fact, could not be ascertained accurately by them after rather diligent efforts.

We find in the record nothing to indicate that there was on the part of defendant or of its employees any desire to damage plaintiff's property. On the contrary, it is quite evident that every reasonable effort was made to ascertain the true location of the cables and to avoid doing any damage to them.

There was no negligence, and, consequently, no liability ensues.

The judgment appealed from is affirmed, at the cost of appellant.

Affirmed.