79-24-

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

YELLOWSTONE VALLEY ELECTRIC
COOPERATIVE, INC., a corporation,

               Plaintiff and Appellant,

THE MONTANA POWER COMPANY, a
corporation,

               Intervenor and Appellant,

    vs.

DUANE OSTERMILLER, THE
MILWAUKEE MOTOR TRANSPORTATION
CO., a corporation, and GETTER
TRUCKING, INC., a corporation,

               Defendants and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              County of Yellowstone.
              Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellants:

        Olsen, Christensen & Gannett, Billings, Montana
        Paul Olsen argued, Billings, Montana
        John Carl argued, Butte, Montana

    For Respondents:

        Anderson, Brown, Gerbase, Cebull & Jones, Billings,
         Montana
        Joseph Gerbase argued, Billings, Montana
        Mike Greely, Attorney General, Helena, Montana

---

                 Submitted:  February 22, 1980

                 Decided: MAR 2 4 1980

Filed: MAR 2 4 1980

Thomas J. Kearney
                           Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a portion of a judgment of a Yellowstone County District Court ruling that section 69-4-603, MCA, does not constitute a taking of property without due process though it requires electric utilities and rural electric cooperatives to provide wire-raising services without reimbursement.

Plaintiff-appellant, Yellowstone Valley Electric Cooperative, Inc. is a rural electric cooperative providing electric service to rural customers by means of an electric transmission and distribution network. Many of the lines constituting this network cross public highways and streets. Respondents each conduct enterprises involving the moving of oversized equipment or structures upon public highways and streets. The moving activities of respondents often require the raising of electric transmission lines. Section 69-4-603, MCA, provides that utilities and cooperatives are required to raise or remove their transmission and distribution lines, when oversized equipment and structures are moved, in order to facilitate the passage of such oversized loads.

Plaintiff petitioned the Yellowstone County District Court for declaratory relief regarding respondents' moving enterprises. Plaintiff sought to have section 69-4-603, MCA, declared unconstitutional as a denial of equal protection and due process. The Montana Power Company was granted permission to intervene and also petitioned for similar declaratory relief. An evidentiary hearing was waived by the parties and briefs were submitted to the court. On September 10, 1979, the District Court ruled that a portion of the challenged statute violated equal protection require-

ments and was, therefore, unconstitutional. The unconstitutional portion of the statute was a 1951 amendment which provided that persons, firms, or corporations engaged in moving oversized structures within the limits of a city or town pay all necessary and reasonable expenses of raising or cutting wires and removing poles.

The amendment was held unconstitutional because it differentiated between inside and outside city or town limits with respect to costs. While determining this portion of the statute unconstitutional, the court also held that the remaining portions of the statute continued in full force and effect. Without the unconstitutional proviso, the statute returned to its pre-1951 amendment posture and was interpreted by the District Court as requiring utilities and cooperatives to provide wire-raising and cutting service without reimbursement in all circumstances. It is from this interpretation that plaintiff and intervenor appeal.

Three issues are raised for our consideration upon appeal:

(1) Was the District Court correct in interpreting section 69-4-603, MCA, as requiring utilities and cooperatives in all circumstances to provide wire-raising and cutting services without reimbursement?

(2) Does section 69-4-603, MCA, unconstitutionally allow property to be taken for the private use of a private party?

(3) Is section 69-4-603, MCA, unconstitutional because it is an unreasonable exercise of the police power?

Section 69-4-603, MCA, is set forth below in its entirety with the 1951 amendment, which was held unconstitutional by the District Court, underscored:

"(1) It shall then be the duty of any person, firm, or corporation owning or operating said poles or wires after service of notice, as required by 69-4-602, to furnish competent workmen or linemen to remove such poles or raise or cut such wires as will be necessary to facilitate removing such house, building, derrick or other structure.

"(2) No person, firm, or corporation engaged in moving any house, building, derrick, or other structure shall raise, cut or in any way interfere with any such poles or wires, unless the persons or authorities owning or having control of the same shall refuse to do so after having been notified, as required by 69-4-602; then, only competent and experienced workmen or linemen shall be employed in such work, and in such case the necessary and reasonable expense shall be paid by the owners of the poles and wires handled; provided, however, that any person, firm or corporation engaged in moving such structure within the limits of any city or town shall pay all necessary and reasonable expense of raising or cutting such wires or removing such poles. The work shall be done in a careful and workmanlike manner, and the poles and wires shall be promptly replaced and damages thereto promptly repaired."

The District Court in this case characterized the above statute as an exercise of the police power, and, accordingly, held that the burden of any expenses created by the statute could be imposed upon utilities and cooperatives without reimbursement. In reaching its conclusion, the court noted that the statute "was part of a 1929 enactment . . . which made no express provision as to who was to stand the cost of wire-raising services except in the instance when the mover did the work because of the owner's refusal to do it when properly requested." Faced with determining the question of costs where there was owner compliance, however, the court found that costs could be imposed upon utilities and cooperatives because the statute was an exercise of the police power. There was no need for compensation. The District Court, speaking of the statute, stated:

". . . Having the purpose of preventing uncontrolled and unsafe interference with electric service, it is well within the limits of a permissible exercise of police power. As such, the fact that it results in an imposition upon the use of the utility owner's property or imposes a burden of expense upon the utility does not in itself violate due process or constitute the taking of private property for public purposes without just compensation. . ."

Appellant and intervenor attack the holdings of the District Court here on two alternative constitutional grounds. On one hand, they argue that, if the statute is an exercise of the police power, it is unconstitutional because it is an unreasonable regulation: it unreasonably and arbitrarily imposes costs upon parties which do not occasion the need for raising or cutting electric transmission lines. It is contended that it is more reasonable to impose costs upon the movers and their clients. Alternatively, appellant and intervenor argue that the statute is unconstitutional because it allows for a "taking" of utility property for the private use of another. It is submitted that the activity of wire-raising or cutting constitutes a temporary deprivation of property which is conducted solely for the benefit of moving companies and their clients. The statute, therefore, is an unconstitutional exercise of the power of eminent domain.

The threshold inquiry in considering these arguments is in determining whether section 69-4-603, MCA, is an exercise of the police power or, rather, sounds in the principles of eminent domain. The police power of the state, of course, is that which enables states to pass regulations for the health, safety and general welfare of the people. N. O. Public Service Comm. v. New Orleans (1930), 281 U.S. 682, 50 S.Ct. 449, 74 L.Ed. 1115; State v. Penny (1910), 42 Mont. 118, 111 P. 727; Billings Properties, Inc. v. Yellowstone

Co. (1964), 144 Mont. 25, 394 P.2d 182. In the exercise of the police power, due process requirements of the Fourteenth Amendment may be met without just compensation. Eminent domain, however, is the right of the state to take private property for public use. Helena Power Transmission Co. v. Spratt (1907), 35 Mont. 108, 88 P. 773; section 70-30-101, MCA. In the exercise of the power of eminent domain, just compensation is required.

In determining whether our statute is an exercise of the police power or eminent domain, we note a split of authority among other jurisdictions facing the same issue with respect to similar statutes and ordinances. See Annot., 83 A.L.R.2d 464 (1962). In one line of cases, ordinances and statutes allowing for the adjustment of wires and poles in moving oversized objects have been upheld as valid exercises of the police power. See, Missouri Pac. Ry. v. Sproul (Kan. 1916), 162 P. 293; State v. Omaha & C. B. St. Ry. Co. (Neb. 1916), 161 N.W. 170; Weeks v. Carolina Tel & Tel. Co. (N.C. 1915), 84 S.E. 812; Indiana Ry. Co. v. Calvert (Ind. 1907), 80 N.E. 961. The moving of buildings and other oversized objects in these cases has been recognized as a reasonable and necessary public use, and the rights of the people to use the streets have been held superior to the rights of utilities to locate their facilities upon such streets. In another line of cases, ordinances and statutes have been held to be takings under the law of eminent domain. Ex Parte Ashworth (Ala. 1920), 86 So. 84; Edison Elec. Light & Power Co. of St. Paul v. Blomquist (Minn. 1911), 185 F. 615; Kibbie Tel. Co. v. Landphere (Mich. 1908), 115 N.W. 244; Northwestern Tel. Exch. Co. v. Anderson (N.D. 1904), 98 N.W. 706. In these cases, the moving of oversized

-6-

objects has been held to be a use which is private, permissive, and extraordinary, conducted only for the benefit of a mover and his client and subject to the vested and superior rights of utilities.

Having reviewed these authorities, we find that our statute is an exercise of the police power and does not sound in eminent domain. The District Court's characterization of section 69-4-603, MCA, was correct: the statute is a regulation enacted by the legislature in the exercise of the police power aimed at protecting the public health, safety and general welfare. Here, the statute serves several vital public interests. First, public safety is concerned. The statute is an obvious attempt to avoid the occurrence on the part of the general public of high voltage electrical accidents. The statute states that "only competent and experienced workmen or linemen" may raise or cut wires. Second, the statute confers a public benefit. Where the statute provides for a controlled method of accommodating a mover's need so that there is prompt replacement and repair, there is minimal interference in providing electrical service to the public. Third, the public interest is also served in that the statute allows for a reasonable and necessary public use, the moving of oversized objects upon the public highways of the state. Finally, the statute recognizes the right of the public to use the highways. See, Hawn v. Kansas Gas & Electric Co. (Kan. 1927), 252 P. 245; Sipult v. City of Pratt (Kan. 1949), 212 P.2d 221.

The statute does not involve the appropriation of a property right or a "taking" under the laws of eminent domain in any traditional sense. In locating their faci-

lities upon a public right-of-way, utilities and cooperatives are conferred a property right which, by its very nature, is subject to other competing franchises and privileges. The easement which is obtained is not an absolute property right; there is no right conferred upon utilities to have their facilities occupy a particular location. New Orleans Gaslight Co. v. Drainage Comm's of New Orleans (1905), 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831; Jones v. Burns (1960), 138 Mont. 268, 357 P.2d 22. Where other competing interests and franchises become involved, a utility may be forced to give up a particular location of its facilities, and reasonable interference may be necessary and proper. Southern Bell Tel. & Tel. Co. v. Williams Bros. (La. 1932), 141 So. 835. The statute is therefore an exercise of the police power and eminent domain is inapplicable.

Appellant and intervenor urge that the statute is unconstitutional even if it is deemed an exercise of the police power. They contend that the statute is an unreasonable regulation because it arbitrarily imposes the costs of wire-raising and cutting upon parties who do not occasion the need for that activity. They submit that it would be much more reasonable to require respondents and their clients to pay for the costs of wire-raising and cutting.

It is well established that a police power regulation must be reasonably adapted to its purpose and must injure or impair property rights only to the extent reasonably necessary to preserve the public welfare. Garden Spot Market, Inc. v. Byrne (1963), 141 Mont. 382, 378 P.2d 220; Freeman v. Board of Adjustment (1934), 97 Mont. 342, 34 P.2d 534. The standard of reasonableness is the constitutional measure of the

proper exercise of the police power. Billings Properties, Inc. v. Yellowstone Co., supra; Bettey v. City of Sidney (1927), 79 Mont. 314, 257 P. 1007; Leischner v. City of Billings (1959), 135 Mont. 109, 337 P.2d 359. It is also well settled that, as a general rule, acts conducted in the proper exercise of police power do not constitute a taking of property and do not entitle the owner of such property to compensation for the regulation or impairment thereof. Compensation is due, however, in cases which exceed regulation or impairment and there is an appropriation of property which amounts to a taking or deprivation of property for public use. 16 Am.Jur.2d Constitutional Law §586.

In this case, the lines of a utility or cooperative are momentarily raised or severed to allow the passage of buildings or other oversized objects upon the public streets. Though there may be a temporary interference or interruption to customer service and inconvenience or hardship to the utility, the property of the utility or cooperative is in no way condemned in any permanent sense. Appellant and intervenor rely on two cases for the proposition that a temporary deprivation of property may constitute a "taking". See, Fuentes v. Shevin (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; Sniadach v. Family Finance Corp. (1969), 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349. Those cases, however, involve personal property being attached under garnishment or replevin statutes simply upon an ex parte application to a court clerk without a hearing and are factually distinguishable from the situation here. In this case, the statute amounts to a regulation or an impairment of utility property and not an actual taking or appropriation of property for the private use of another.

We find, therefore, that the statute is a reasonable exercise of the police power. Further, we find that it is not unreasonable to impose the costs of wire-raising or cutting upon utilities and cooperatives. Imposing costs upon utilities and cooperatives is perhaps the most effective way of spreading the burdens created by the statute. In this way, consumers share both the burdens and the general benefits which the statute intended and is calculated to secure. Imposing costs upon respondents and other moving companies would be too burdensome and would, in effect, make the activity of moving buildings and other oversized objects cost-prohibitive. Accordingly, we affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices