No. 86-582

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

JEANNE MORLEDGE WHISTLER; KARL
MORLEDGE and ANITA MORLEDGE,
husband and wife; LAURA MORLEDGE;
and LYNN MORLEDGE,

        Plaintiffs and Appellants,

  -vs-

BURLINGTON NORTHERN RAILROAD COMPANY,
a Delaware corp; STEVE BAKER, in his
official capacity as Superintendent of
Building and Safety Dept., City of
Billings, Montana; and YELLOWSTONE
COUNTY, MONTANA,

        Defendants and Respondents.


APPEAL FROM: District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patten Law Firm; James A. Patten argued, Billings,
        Montana

    For Respondent:

        Crowley Law Firm; Michael S Dockery; Gerald Krieg
        argued, Billings, Montana
        James Tillotson, City Attorney, Billings, Montana
        Harold Hanser, County Attorney, Billings, Montana


               Submitted: June 5, 1987

                Decided: August 18, 1987

Filed: AUG 18 1987

*Ethel M. Harrison*

—————————————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiffs appeal the denial of their application for a preliminary injunction entered by the District Court of the Thirteenth Judicial District in and for Yellowstone County. We affirm.

Plaintiffs (the "Morledges") initiated this action to challenge the issuance of a building permit issued by Yellowstone County to the Burlington Northern Railroad. The permit was issued on February 6, 1986, and authorized construction of a 35,000 barrel diesel tank and excavation and site work for an accompanying retaining dike. The Morledges own land adjacent to the location of the fuel tank.

Burlington designed this fuel tank to facilitate the transportation of diesel fuel used in its everyday operations. The tank is located near the intersection of the Yellowstone and Powder River Pipelines. The Yellowstone Pipeline is a ten-inch line running east and west, originating in Billings, Montana and terminating in Moses Lake, Washington. Finished petroleum products are moved through this pipeline in ten day cycles, with separate batches of gasoline, distillate and diesel fuel transported in a patterned sequence during each cycle.

The Powder River Pipeline is a four-inch line running generally north and south, and was previously used to deliver crude oil to Laurel, Montana. The two pipelines intersect north of Laurel at a point named Alkali Creek Station.

For economic reasons, Burlington sought a way to transport diesel fuel from refineries in Billings to its Laurel railyards via pipeline rather than by railroad tank

cars. Hence, Burlington designed a plan to transport fuel from the Billings refineries west through the Yellowstone Pipeline to Alkali Creek Station and then south to Laurel through the Powder River line.

However, because of the mismatched pipe diameters, the cycling of other products on the Yellowstone line and the amount of fuel to be transported, Burlington's fuel could not pass directly from the Yellowstone to the Powder River line. Burlington therefore designed this fuel tank so that its fuel could be transported at high pressure along the Yellowstone line, directed into the fuel tank, and then repumped at a lower pressure into the Powder River line. By necessity with this design, this tank, in addition to orchestrating the change of flow of the fuel, would also have to store temporarily the fuel that would accumulate before it could all be repumped into the Powder River line.

With this design in mind, Burlington submitted its application for a building permit to construct the tank and related accessories. The property upon which Burlington sought to construct its tank is zoned Agricultural-Open Space ("A-O") by the Yellowstone County Jurisdictional Area Zoning Plan.

Typically, this County Zoning Plan permits certain land uses within each particular zoning designation as well as certain other uses deemed accessory to the specified allowed uses. Under the terms of this Plan, pipelines are permitted uses within an A-O zone. Liquid petroleum storage, on the other hand, is permitted as a primary use only in the Heavy Industrial Zone and in certain other (non-A-O) zones pursuant to special exception.

3

Burlington submitted its building permit application on November 4, 1985. Upon initial review, the Zoning Coordinator and the City-County Planning Department determined the project was not permitted in an A-O zone. Following this initial decision, Burlington and Continental Pipe Line Company (co-owner and operator of the Yellowstone line and owner and operator of the Power River line), through legal counsel, submitted a letter to the Zoning Coordinator. The letter contained additional factual information and legal authority supporting Burlington's position that the fuel tank and associated facilities were permitted in an A-O zone. On December 23, 1985, a meeting was held to discuss the project and zoning issues, and shortly thereafter, the city-county zoning officials concluded this fuel tank was part of the pipeline and therefore permitted in an A-O zone. The county issued Burlington the necessary building permits and construction began.

The Morledges commenced this action in the District Court,[1] requesting relief which included, inter alia, an order declaring the issuance of the building permit to Burlington arbitrary, capricious, an abuse of discretion and unlawful and an order permanently enjoining the construction of the fuel tank and retaining dike. In addition, the Morledges filed an application for preliminary injunction seeking to enjoin commencement or continuation of

---

1    The County Zoning Plan provides that any person aggrieved by a decision of the Zoning Coordinator may appeal to the County Board of Adjustment. The Morledges chose, instead, to appeal directly to the District Court. Burlington did not contest this strategy.

4

construction of the tank and its accessories. The District Court issued a show cause order regarding the preliminary injunction and set a hearing for March 13, 1986.

Following the hearing, the District Court denied the Morledges' application for preliminary injunction. The parties later stipulated that the court's findings and conclusions should be treated as final, thereby resolving the case on its merits before the District Court. Pursuant to the written stipulation, the District Court entered judgment denying the requests for all relief sought by the Morledges and dismissed their complaint with prejudice. The Morledges now appeal.

On appeal, appellants appear to present essentially two arguments. They first contend that the District Court erred in its conclusion that the zoning officials' decision was lawful, regular and reasonable. Appellants instead insist that the zoning officials' decision was arbitrary, capricious and an abuse of discretion. Second, appellants argue that as a matter of law, the District Court erred in its interpretation of the County Zoning Plan. Both arguments center upon the contention that this fuel tank, regardless of its stated purpose, will store fuel, and is therefore not permitted in an A-O zone. Though the arguments are related, we will address each separately.

I

We are first asked to determine whether substantial, credible evidence supports the District Court's conclusion that the zoning officials' decision was lawful, regular and reasonable.

5

We initially note that when an administrative decision or order is reviewed by a district court, it is entitled to a rebuttable presumption in favor of the decision of the agency. Thornton v. Commissioner of the Dept. of Labor and Industry (Mont. 1980), 621 P.2d 1062, 1064-65, 37 St.Rep. 2026, 2028. This rebuttable presumption is generally recognized in the zoning and planning context. See Gordon Paving Co. v. Blaine County Board of County Commissioners (Idaho 1977), 572 P.2d 164, 165. The Oregon Supreme Court, addressing the issuance of a building permit, stated in Murphy v. S.A. Hutchins & Associates Const. Co., Inc. (Or. 1972), 501 P.2d 1273, 1275:

> [A] presumption of validity, regularity, and reasonableness accompanies the acts of the city officials charged with the enforcement of the ordinance. [Citation omitted.]

The District Court correctly recognized this presumption. The burden of overcoming this presumption rests, of course, on the party attacking the administrative order. Thornton, 621 P.2d at 1065.

We next note that at the March 13 hearing, the District Court received relevant evidence regarding the propriety of the decision-making process utilized by the zoning officials. The County Zoning Plan vests interpretation and enforcement of the Plan in a Zoning Coordinator.[2] The Zoning Coordinator, in conjunction with the staff of the City-County

2    A board of county commissioners is, of course, entitled to appoint officers to supervise the provisions of a zoning ordinance. Section 76-2-210(2), MCA.

6

Planning Department, is assigned the task of reviewing building permit applications to determine compatibility with the underlying zoning. Appellants do not contest that the proper officials made this decision.

Further, these officials reached their decision only after what the record reveals was a lengthy review of the underlying facts. As noted, the Zoning Coordinator and Planning Department initially denied Burlington's permit. After Burlington and Continental challenged this denial via a letter written through counsel, the zoning officials again reviewed the entire project and conducted a meeting to discuss the relevant issues. Again, the District Court received ample evidence demonstrating that this decision was a considered one.

Finally, the District Court received evidence indicating that the decision itself was reasonable. Burlington introduced evidence illustrating the full measure of the project in question in support of its argument that this tank is permitted in an A-O zone.

In short, we find the determination that this tank is a part of the pipeline was based upon a careful and conscientious review by the Zoning Coordinator and City-County Planning Department, the agent and agency vested with the discretion and authority to interpret the County Zoning Plan. The District Court's determination that the decision of the Planning Department was lawful, regular and reasonable was based upon a full review of the decision-making process and the details of the project. The District Court's conclusion is supported by substantial, credible evidence.

Appellants also argue that the District Court erred as a matter of law in its interpretation of the County Zoning Plan. They contend that under the terms of the Plan, liquid fuel storage in a tank, no matter how temporary or in what context, is not permitted in an A-O zone. Appellants conclude that the District Court erred by not ruling that the express terms of the County Zoning Plan prohibit this tank in an A-O zone.

We find that appellants' argument presents too narrow and too rigid an interpretation of the zoning ordinance. It has been elsewhere established that since zoning laws and ordinances are in derogation of the common law right to free use of private property, such ordinances should be strictly construed. See e.g., Foster Village Community Ass'n v. Hess (Hawaii App. 1983), 667 P.2d 850, 854; Specht v. City of Page (Ariz.App. 1981), 627 P.2d 1091, 1095; Keller v. City of Bellingham (Wash. 1979), 600 P.2d 1276, 1279. At the very least, such ordinances must be given a fair and reasonable interpretation with some regard given the proposed use.

As noted by the District Court, the County Zoning Plan does not contain any definition of "pipeline" decisive of the issue, nor are there any Montana statutes or decisional authorities which provide controlling guidance. Accordingly, the question fell to the zoning officials assigned to interpret and apply the zoning regulations consistent with the terms and purposes of the County Zoning Plan. These officials decided that pursuant to the County Zoning Plan, this fuel tank could be considered a part of the pipeline and is therefore permitted in an A-O zone. We agree that when interpreting a zoning ordinance, considerable judicial

deference should be accorded the interpretation provided by an officer charged with its enforcement. Keller, 600 P.2d at 1280.

The record supports the zoning officials' interpretation. These officials impliedly found that this project was compatible with the nature of an A-O zone. The record supports such a finding. The primary purpose of this project was not liquid petroleum storage, but the facilitation of the transportation of diesel fuel. The storage that does occur is concededly brief, and the project does not present the typical fuel storage accessories, such as off-loading ramps and related traffic. In short, we find that the interpretation provided by those charged with the ordinance's enforcement is not unreasonable. We find no error.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

Mr. Justice John C. Sheehy, dissenting:

I dissent.

A 35,000 gallon tank sitting in the middle of a moat is exactly akin to any storage tank at any tank farm at any refinery in Montana. It mocks the zoning plan to assume such a tank is merely a part of a pipeline.

I cannot accept the purported logic of the majority that the primary purpose of the tank is not storage but the transportation of fuel. The primary purpose is indeed storage--storage until the fuel can be taken through a lesser pipeline to another location. In that use, again the storage tank is akin to any fuel storage tank.

These are strange days. The federal government names nuclear arms as peacemakers. Grocery stores sell turkey as ham. In Montana, a 35,000 gallon surface fuel tank is a buried pipeline. The law is a farce when words mean nothing and everything.

_____
                Justice

I concur in the dissent of Mr. Justice John C. Sheehy.

_____
                Justice

- 10-