JUSTICE RICE,
dissenting.
¶72 In its analysis, I believe the Court misses the big picture: the Landowners have a constitutional right to property and to protect their property rights from infringement; Missoula County has no constitutional right to zone.
¶73 The Court holds that the protest provision in §76-2-205(6), MCA, is an unconstitutional delegation of legislative power that violates due process guarantees in Article II, Section 17 of the Montana Constitution and the Fourteenth Amendment of the United States Constitution. Opinion, ¶ 51. However, the purported due process violation-4hat the protest provision confers “the power on some property holders to virtually control and dispose of the property of others,” Opinion, ¶ 48 (citing Eubank)-did not occur here. Indeed, the Court has gotten it exactly backwards. Landowners are not disposing the property of others, but are protecting their own property from disposition. By the Court’s striking of the right to protest zoning restrictions upon their land, it is the Landowners who have been denied due process and their constitutional property rights.
¶74 Landowners enjoy the inalienable right of lawfully “acquiring, possessing and protecting property.” Mont. Const, art. II, §3; see also e.g. Roberge, 278 U.S. at 121, 49 S. Ct. at 52 (a landowner’s right “to devote its land to any legitimate use is properly within the protection of the Constitution.”). As mentioned above, there is no constitutionally-based right to zone, and we have recognized the principle that “zoning laws and ordinances are in derogation of the common law right to free use of private property ...” Whistler v. Burlington N. R.R., 228 Mont. 150, 155, 741 P.2d 422, 425 (1987) (citations omitted). In 1995, the *380 Montana Legislature provided additional safeguards for agricultural property from governmental zoning and nuisance ordinances, see §76-2-901, MCA, which included the protest provision challenged here.
¶75 A delegation of legislative power must confer upon a designated group or agency the ability to create or enact a law. The Court quotes the standard provided in Bacus for delegation of legislative powers, Opinion, ¶ 44, but overlooks the point that, for delegation to occur, an agency or group must be given ‘law-making power” to enact, make, or create a law. Bacus, 138 Mont at 78-79, 354 P.2d at 1061. This point was discussed in Eubank, where two-thirds of the neighbors petitioned the local government to institute a setback restriction that affected the landowner’s use of his property. Eubank, 226 U.S. at 141, 33 S. Ct. at 76. It was in this context of law-making power that the Supreme Court held, as rephrased by the Court, that “‘conferring the power on some property holders to virtually control and dispose of the property rights of others’ unlawfully empowered ‘[o]ne set of owners [to] determine not only the extent of use but the kind of use which another set of owners may make of their property,’ ” and struck down the ordinance as unconstitutional. Opinion, ¶ 48 (quoting Eubank, 226 U.S. at 143, 33 S. Ct. at 77). The Court has here misapplied the holding in Eubank by twisting it to support the opposite conclusion.
¶76 This is further illustrated by the U.S. Supreme Court’s subsequent explanation. Three years aitex Eubank, the Supreme Court considered whether a Chicago ordinance was an unconstitutional delegation of legislative power in Thomas Cusack Co. v. City of Chicago, 242 U.S. 526, 37 S. Ct. 190 (1917). The Chicago ordinance required consent from a majority of residential property owners on the affected city block before a person or company could construct a billboard on the city block. Thomas Cusack Co., 242 U.S. at 527-28, 37 S. Ct. at 190. The Supreme Court held that this landowner check on the city’s zoning power was not an unconstitutional delegation of legislative power, and compared Chicago’s ordinance to the ordinance at issue in Eubank:
The [ordinance in Eubank] permits two-thirds of the lot owners to impose restrictions upon the other property in the block, while the [ordinance in Thomas Cusack Co.] permits one-half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances.
*381 Thomas Cusack Co., 242 U.S. at 531, 37 S. Ct. at 192 (emphasis added). The constitutional ordinance in Thomas Cusack Co. allowed a particular kind of property owners-residentiaLfeo block or remove a zoning restriction, Thomas Cusack Co., 242 U.S. at 531, 37 S. Ct. at 190, while the unconstitutional ordinance in Eubank conferred power to a group of property owners to enact new property restrictions, Eubank, 226 U.S. at 143-44, 33 S. Ct. at 77.
¶77 Section 76-2-205(6), MCA, is a landowner protection device akin to that in Thomas Cusack Co., because the protest provision does not confer power to enact or create a law, as defined in Bacus. The protest provision merely permits Landowners, who have a constitutional right to possess and protect their own property, to preserve the status quo by blocking proposed zoning for one year. The fact that some may resent the device enacted by the Legislature to protect property rights does not render it unconstitutional.
¶78 The Court fails to recognize that Landowners held only the ability to protect and prevent their own land from being zoned, not to approve or impose conditions on their neighbors’ property. The Court correctly presents the applicable principles articulated in Shannon and Cary, but does so in errant oversimplification. In Shannon and Cary, the neighboring landowners were granted the ability to prevent the plaintiff from taking a proposed action on the plaintiffs’ own property. Shannon, 205 Mont. at 112, 666 P.2d at 751 (plaintiff landowners sought a variance to place a mobile home on their own land, which neighbors would not approve); Cary, 559 N.W.2d at 892 (plaintiff landowner sought to rezone her land from agricultural to medium density residential, which neighbors protested). Here, the protest power used by the Landowners to prevent zoning of their own land in no way deprived their neighbors from any right to use their own property.
¶79 Finally, §76-2-205(6), MCA, does not grant to Landowners the power to make a final arbitration necessary to constitute an unconstitutional delegation of legislative power. Rather, a successful protest provides for a one-year suspension of the implementation of new zoning. The County may again engage in zoning after the one year period has passed, with or without modifications. Section 76-2-205(6), MCA. In light of a proper understanding of the mechanism of the protest provision and applicable federal and state precedent, the Court’s striking of § 76-2-205(6), MCA, significantly expands the governmental power to zone and erodes the ability of the Legislature *382 and property owners to protect the constitutional rights to lawfully acquire, possess, and protect their property. Mont. Const, art. II, §3. Many such similar protest provisions in Montana law will now be called into question. In the words of the U.S. Supreme Court, the statutory protest here is “a familiar provision affecting the enforcement of laws and ordinances.” Thomas Cusack Co., 242 U.S. at 531, 37 S. Ct. at 192.
¶80 In response to this Dissent, the Court fails to acknowledge the clear analysis of the U.S. Supreme Court distinguishing the constitutionally flawed ordinances in the cases relied upon by the Court from the statute at issue here. The Court instead invokes the property rights “of the remaining property owners in the zoning district,” Opinion, ¶ 56, as if this case somehow involved a balancing of rights between property owners. However, there is no balancing of constitutional rights here-at least, there is not supposed to be. Under §76-2-205(6), MCA, other property owners had the same right as the Landowners to protest or not protest the zoning proposed by the County. The Landowners exercised their right of protest. The issue thus raised and litigated is the right of property owners to resist the government’s restrictions on the use of their property. The legal conflict is one, not between citizens, but between citizens and the government. And it is a conflict in which the citizens, under the Court’s decision, come out the big losers.
¶81 I agree with the Court’s conclusion that the District Court erred by rejecting Landowners’ claim that they were necessary parties, but disagree that the District Court’s error was harmless. By the time the Landowners were allowed to intervene, the District Court had already granted the preliminary injunction and the County Commissioners had already enacted the North Lolo Rural Special Zoning District. The failure to join Landowners denied them an opportunity to argue against the preliminary injunction and in favor of the constitutionality of the statutory protest provisions. By the time Landowners got to make their arguments, the zoning was enacted.
¶82 The District Court should have known that Landowners were both interested and necessary parties to this action from the beginning. The complaint and the answer agreed that Landowners had availed themselves to the protest provision in §76-2-205(6), MCA, to protect their property from being zoned. By its preliminary injunction, the District Court voided §76-2-205(6), MCA, without notice to or hearing from the Landowners, whose efforts pursuant to the protest provision *383 were thereby negated. To me, such exercise of raw judicial power is astonishing. The District Court should have engaged in the precisely opposite presump tions-fehat the statutory protest provision was constitutional and that the constitutional right of property reinforced the need to uphold the statute until demonstrated beyond a reasonable doubt that it was unconstitutional. Landowners’ constitutional right to protect their property from governmental intrusion was thereby prejudiced. The Landowners should have come before the District Court as successful protestants who were entitled to rely on the presumption of constitutionality of the protest statute. Instead, they came before the District Court having already lost the battle: the protest provision was struck down, the presumption of the statute’s constitutionality was eliminated, and the zoning was already enacted. Landowners had “a snowball’s chance” before the District Court.
¶83 The County had no constitutional power to zone; it had only the powers given by the Legislature. The District Court first marginalized the Landowners procedurally and then failed to protect their substantive constitutional rights, granting new powers for government to override property rights.
¶84 I would reverse.